UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CONSUELO RUBIO,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Commissioner of Social Security,<br><br>Defendant. | No. 1:20-cv-01012-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 18)** |

**I.     Introduction**

Plaintiff Maria Consuelo Rubio ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 18, 19, 20.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

**II.     Procedural Background**

On September 21, 2016 Plaintiff applied for benefits alleging disability as of November 6, 2014 due to carpal tunnel syndrome, cervical and lumbar disc problems, and nerve damage in her hands.  AR 393.  The Commissioner denied the applications initially on March 10, 2017, and on reconsideration on June 23, 2017.  AR 200, 230.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on March 27, 2019.  AR 162–199.  On July 11, 2019 the ALJ issued a decision denying Plaintiff's application.  AR 16–40.  The Appeals Council denied review on June 8, 2020.  AR 1–9.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 8 and 9.

1

On July 22, 2020 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.     Factual Summary[2]

#### A.      Plaintiff's Testimony

Plaintiff testified with the assistance of a Spanish interpreter.  She suffered from intense daily pain in her neck and back radiating to her shoulders, arms, hands, legs and knees.  AR 177–80.  Her pain increased with activity such as sweeping, looking down and cooking.  AR 180.  When she experienced pain she could not do anything, including lying down.  AR 180.  She could stand for about 30 minutes, walk for 30 minutes and lift about 20 pounds.  AR 183.  She had problems holding and grasping things.  AR 183.  In her written function report she indicated she could not do sustained activity.  AR 448.  She had difficulty cooking due to problems standing and using her hands.  AR 450.  Housework took her all day because she required breaks.  AR 450.  She could not lift a gallon of milk.  AR 453.  She could walk three blocks before resting for 10-15 minutes.  AR 453.  She could only focus for 30 minutes at a time.  AR 454.  Stress increased her pain.  AR 454.  She had problems with postural movements, reaching, standing, lifting and using her hands.  AR 453.  She couldn't complete her daily tasks.  AR 414.

#### B.      Medical Records

Plaintiff underwent a nerve conduction study on January 9, 2015 which was suggestive of median nerve neuropathy affecting motor and sensory fibers consistent with bilateral carpal tunnel.  AR 781.  A January 23, 2015 examination revealed decreased muscle strength in both lower extremities, decrease sensation to pinprick on the right, tenderness to palpation, antalgic gait and decreased lumbar spine range of motion.  AR 798–99.  A January 26, 2015 lower extremity electromyography revealed denervation of the right sided L5-S1 innervated muscles.  AR 796.

A June 5, 2018 lumbar spine MRI showed anterolisthesis of L4 over L5 vertebra, mild degenerative changes in the lower lumbar spine with paraspinal muscle spasm, broad-based posterior disc protrusions and mild bilateral facet joint hypertrophy at L3 to L4 without central canal or neural foraminal stenosis.  AR 1535.  The MRI also showed spondylolisthesis, diffuse

---

[2] Because the parties are familiar with the background facts, the summary herein will focus on the facts specifically at issue in this appeal.

2

asymmetric posterior disc bulge, and bilateral facet joint and ligamentum flavum hypertrophy at L4 to L5 with mild central canal stenosis, neural foraminal stenosis and an abutting of the right exiting L4 nerve root.  AR 1535.

A March 5, 2019 cervical spine MRI showed degenerative retrolisthesis of C5 over C6, degenerative change in the cervical spine with paraspinal muscle spasm, broad-based posterior disc protrusions and mild posterior longitudinal ligament thickening at C2 to C3 and C3 to C4 causing mild central canal stenosis, and broad-based posterior and right foraminal disc protrusion at C4 to C5 causing mild right neural foraminal stenosis and abutting the right exiting C5 nerve root. AR 1622.  The MRI also showed spondylolisthesis, broad-based posterior disc protrusion and facet hypertrophy at C5 to C6 resulting in central canal stenosis and neural foraminal stenosis and abutting the exiting C6 nerve root; broad-based posterior disc protrusion and mild bilateral facet joint hypertrophy at C6 to C7, causing mild central canal stenosis; and, progression of disc disease and degenerative changes at C2 to C3, C4 to C5, and C5 to C6.  AR 1623.

Plaintiff received regular pain management treatment, used narcotic pain medication and received steroid injections.  AR 123, 525, 912, 1418, 1426, and 1520.

### C.    Consultative Exams; Medical Opinions; Administrative Findings

Plaintiff's treating physician, Dr. Thoene, completed a physical medical source statement. AR 1538–41.  She identified the following diagnoses: chronic low back pain with sciatica and displacement of disc (lumbar) with radiculopathy and chronic radicular cervical pain with displacement of cervical disc.  AR 1538.  She identified the following clinical findings and objective signs supporting her assessment: pain to palpation to cervical spine; pain to palpation of lumbar spine; decreased strength right dorsiflexion, 4/5; and range of motion with pain.  AR 1535. She opined that Plaintiff had physical limitations inconsistent with sedentary work and that Plaintiff would miss more than four days of work per month as a result of her impairments. AR 1538–40.

Medical examiner Albert Simpkins, M.D., performed an examination of Plaintiff on August 11, 2015 in connection with a workers compensation claim and opined that Plaintiff was precluded from heavy lifting, repetitive motions of the neck, holding the neck in a stationary position for prolonged periods, and overhead work.  AR 925.  Non-examining state agency physicians Khong

and Bobba reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively, and both concluded that Plaintiff was capable of performing light work with occasional postural activities. AR 110–11; 241–22.

## IV. Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**VI.    The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of November 6, 2014. AR 24. At step two the ALJ found that Plaintiff had the following severe impairments: obesity, fibromyalgia, degenerative disc disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome and right-sided L5-S1 radiculopathy. AR 24. The ALJ found that Plaintiff had the following non-severe impairments: non-calcified left lower lobe lung nodule, hepatic calcification in the liver, hiatal and periumbilical hernias, ovarian cysts, nicotine addiction, chronic cough, chest wall pain and chronic obstructive pulmonary disease (COPD). AR 25. At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 28.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b)

and 416.967(b), with the following limitations: must alternate between sitting and standing every 30 minutes; would be off task 5% of the time due to pain and fatigue; could occasionally perform some postural activities and never perform others; could perform frequent fingering; could have no exposure to respiratory irritants, no exposure to exposed heights, nor frequent exposure to moving machinery. AR 28. At step four the ALJ found that Plaintiff could not perform her past relevant work as a waitress. AR 32. At step five, in reliance on the VE's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: collator operator, photocopy machine operator, and marker. AR 33. Accordingly, the ALJ found that Plaintiff had not been disabled since her alleged onset date of November 6, 2014. AR 33.

### VII. Issues Presented

Plaintiff contends that the ALJ offered insufficient reasoning for discounting her treating physician's opinion and for discounting Plaintiff's subjective statements.

#### A. Dr. Thoene's Opinion

##### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must

determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations). An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion

of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2. **Analysis**

Dr. Thoene opined that Plaintiff's impairments precluded even sedentary exertional work and that she would miss more than four days of work per month as a result of her impairments. AR 1538–40. Dr. Thoene's opinion was contradicted by the state agency reviewing physicians who opined Plaintiff could perform light work. AR 110–11; 241–42; 925. The ALJ was therefore required to offer specific and legitimate reasons for discounting Dr. Thoene's opinion.

The ALJ offered the following discussion of the opinion evidence:

> Jennifer Thoene opined on January 25, 2019, that the claimant was unable to perform even less than sedentary work [Exhibit 16F]. The undersigned accords the greatest weight to the opinions of the State agency consultants because the doctors' opinions are the most consistent with the medical record taken as a whole, including the claimant's generally conservative treatment with only pain management with no indicated surgical consultations or treatment, her generally mild positive diagnostic objective findings, and her generally normal objective findings upon physical examinations. The undersigned accords partial but limited weight to the opinion of Dr. Simpkins, as the medical record does not support significant limitations in range of motion of the claimant's neck since she is able to turn her head as needed for driving. In addition, the medical record does not support limitations in the claimant's ability to work overhead, as she had a negative electromyography and a normal range of motion and motor strength at the upper extremities. *The undersigned accords no weight to the opinion of Ms. Thoene because it is unclear whether she is an acceptable medical source. Furthermore, her opinion is not supported by the claimant's treatment history and the generally no more than mild objective medical evidence of record.* Overall, the undersigned has given the claimant the benefit of the doubt and provided a residual functional capacity that gave significant consideration to her subjective complaints in the general scope supported by her treatment history and objective findings.

AR 29–30 (emphasis added).

Plaintiff argues, and Defendant concedes, that the ALJ incorrectly suggested Dr. Thoene was not an acceptable medical source. Indeed, the reasoning behind the ALJ's comment is unclear. Dr. Jennifer Thoene, M.D., is a board-certified family practice physician who treated Plaintiff

throughout the relevant period.³  Accordingly, there was no basis to question whether she was an acceptable medical source. *See* 20 C.F.R. § 416.902 ("Acceptable medical source means a medical source who is a: 1) Licensed physician . . ."). Nevertheless, the ALJ offered independently sufficient reasoning for rejecting Dr. Thoene's opinion, as explained below. The error was therefore harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.").

Plaintiff's second argument spans less than one page in length and, setting aside block quotations and legal citations, consists of only the following two assertions: 1) "the ALJ's statement that Dr. Thoene's opinion was not supported by the treatment and medical record is not specific," and 2) "Here, the ALJ provides no explanation. Just a conclusion. That is error. As a result, the ALJ's assertion does not provide a specific and legitimate basis to reject Dr. Thoene's treating opinion." Br. at 15, Doc. 18.

Indeed, the ALJ offered a rather generic assertion that Dr. Thoene's opinion was unsupported by treatment history and mild objective evidence. Had the ALJ offered no additional discussion the analysis would have been deficient. However, the ALJ offered more detailed discussion, as quoted above. Plaintiff only quotes the italicized portion above but leaves out the ALJ's discussion of the other opinion evidence, a discussion which was equally applicable to Dr. Thoene's opinion.

After introducing and summarizing Dr. Thoene's opinion, the ALJ explained his reasoning for giving great weight to the opinions of the state agency consultants and only partial weight to the opinion of the medical examiner. The ALJ's articulated reasons included: 1) "generally conservative treatment with only pain management with no indicated surgical consultations or

---

³ *See* https://www.kernmedical.com/find-a-doctor/jennifer-thoene-md/

treatment," 2) "generally mild positive diagnostic objective findings," 3) "generally normal objective findings upon physical examinations," 4) sufficient neck range of motion to drive, and 5) "negative electromyography and a normal range of motion and motor strength at the upper extremities." AR 29–30.

The ALJ also provided a detailed factual summary of the associated treatment history and clinical findings, some of which was suggestive of limitations[4] and some of which was not.[5] AR 30–31. Although the ALJ did not specifically articulate which facts from his summary supported his conclusion that the objective findings were generally mild and generally normal, the ALJ's summary appears balanced and comprehensive, and his conclusion does not appear facially erroneous. Moreover, Plaintiff does not specifically contest the accuracy of the ALJ's objective recitation of the medical history, or the ALJ's conclusion as to what that history showed on balance.

Granted, the ALJ's ping-ponging approach to discussing the opinion evidence was not the most intuitive from an organizational perspective. Nevertheless, no inferential leaps are required here. The ALJ provided detailed reasoning for according great weight to the state agency physicians' opinions, and partial weight to the medical examiner. That reasoning applied with equal logical force to the ALJ's related decision to accord no weight to Dr. Thoene's contradictory opinion even though the ALJ did not reiterate that reasoning when discussing Dr. Thoene's opinion

---

[4] These included: tenderness to palpation in hip, thigh, trapezius, greater trochanter, sciatic notch and paravertebral muscles; muscle spasms; decreased cervical and lumbar range of motion; positive straight leg raise and hyperextension test; upper extremity nerve conduction studies consistent with bilateral carpal tunnel syndrome; lower extremity electromyography consistent with right-sided L5-S1 radiculopathy; cervical MRIs showing disc dissection, central canal and neural foraminal stenosis, disc protrusions, posterior longitudinal ligament thickening, spondylolisthesis, facet hypertrophy and abutting the right exiting nerve roots, facet joint hypertrophy, and progression of disc disease and degeneration; lumbar spine MRI showing anterolisthesis, degenerative changes, disc protrusions, facet joint and ligamentum flavum hypertrophy, central canal and neural foraminal stenosis, and an abutting of the right exiting L4 nerve root.

[5] These included: full neck range of motion; normal, intact and symmetric sensation; normal muscle bulk, contour, tone and strength; normal coordination; normal grip strength; normal range of motion of the major joints of the spine, hips, upper and lower extremities; normal gait; 50% pain improvement after lumbar steroid injections; 100% improvement in bursa pain following trochanteric bursa injections; positive response to pain medication without side effects; upper extremity electromyography not suggestive of denervation; lower extremity nerve conductions studies not suggestive of neuropathy or plexopathy  AR 30–31.

specifically. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). The ALJ appropriately gave more weight to the state agency physicians and the medical examiner whose opinions he found more consistent with medical evidence. *See* 20 C.F.R. § 404.1527(c)(4); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In sum, Plaintiff solely takes issue with the two sentences the ALJ devoted specifically to Dr. Thoene's opinion. Those two sentences, when taken in isolation, do appear deficient. However, Plaintiff ignores the ALJ's discussion of the other opinion evidence and the consistency of that opinion evidence with the objective medical record. Because Plaintiff neither acknowledges nor disputes the relevant portions of the ALJ's opinion, her argument falls short.

### B.     Plaintiff's Subjective Statements

#### 1.     Applicable Law

The ALJ is responsible for determining credibility,[6] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the

---

[6] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2. **Analysis**

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 29. Thus, the ALJ was required to articulate clear and convincing reasons before rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).

After summarizing Plaintiff's testimony, the ALJ provided the following statement:

> The claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*.

AR 29 (emphasis added). Plaintiff contends the ALJ's articulated reasoning fell short of the applicable standard. Defendant responds that the ALJ properly cited a number of facts in support

of his decision, including: 1) minimal supportive objective findings on MRI imaging, physical examination and neurological studies; 2) Plaintiff's admitted activities of doing yoga, travelling to Mexico for 17 days, making dinner, doing dishes, shopping, cleaning, preparing her kids for school, and maintaining personal care; and 3) positive response to medication regimen and injection therapy. Resp. at 9–11 (citing AR 27, 30, 32, 1516, 1522, 1526, 412-413, 449–52, 180, 182, 1266).

Defendant is correct that the ALJ did observe these facts in his recitation of objective evidence, facts which can serve as clear and convincing reasons for rejecting subjective testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (activities of daily living); *see* 20 C.F.R. § 404.1529(c)(3)(iv) (medication regimen and treatment history). However, the ALJ never looped back (even in summation at the end of his analysis) to tie together his reasoning for discounting Plaintiff's testimony. The facts Defendant underscores were merely part of the ALJ's lengthy factual recitation, some of which was suggestive of limitations and some of which was not. Although a court can draw certain inferences from an ALJ's opinion, the ALJ must at a minimum tie his reasoning together (as the ALJ did with the opinion evidence, as explained above). The ALJ offered nothing to bridge the gap between 1) his analytically disengaged factual recitation, and 2) his boilerplate conclusion that Plaintiff's testimony was unsupported. Accordingly, the ALJ erred. *See Treichler v. Comm'r of Soc., Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

Nevertheless, there is no basis to find harmful error here. Plaintiff identifies no specific oral or written testimony which, if credited as true, would have mandated more restrictive limitations than the ALJ incorporated in the RFC. Even in the absence of such testimony, ALJs always try (and often fail) to persuasively explain their reasoning for discounting a claimant's testimony. That failure does not necessarily rise to the level of harmful error where, as here, the ALJ's ultimate RFC does appear to account for Plaintiff's testimony and Plaintiff does not attempt

to demonstrate otherwise.[7]

Plaintiff underscores the following oral and written testimony:

Rubio testified that she suffers from neck pain. (A.R. 177). She also stated that she has pain throughout her body. (A.R. 178). Her neck pain is the worse. Id. It travels to her shoulders, arms and hands. Id. The pain is also in her legs and knees. Id. The neck pain is intense and daily. Id. However, the pain varies in severity. Id. Her neck pain increases when she sweeps, looks down, and cooks. Id. She stated that she received injections in her neck and was scheduled for physical therapy. (A.R. 179). She spoke to her doctors about possible neck surgery but it was postponed due to her other health issues. (A.R. 181). Rubio testified that she suffers from back pain. (A.R. 180). She stated that when she gets the back pain - she cannot do anything, including lying down. Id. That pain also varies as some days her back is better than others. Id. She had injections in her back and physical therapy. Id. She does yoga twice a week based on doctor's advice that she needed to stretch more. (A.R. 181).

Rubio testified that she used to take narcotic pain medication but it was switched to tramadol due to potential addiction concerns. (A.R. 181-182). Rubio testified that she sometimes utilizes a back brace. (A.R. 175). She testified that she wears wrist braces when she is resting. (A.R. 176-177). With respect to her functional abilities, Rubio testified that she could stand for about 30 minutes, walk for 30 minutes at a time, and lift about 20 pounds. (A.R. 183). She stated that she has problems holding and grasping things. Rubio indicated that she cannot do sustained activity. (A.R. 448). She indicated that she cooks less because of problems standing and using her hands. (A.R. 450). She does housework but it takes all day because she has to take many breaks. Id. She indicated that suffers from chronic pain and inflammation that results in an inability to lifting no more than a gallon of milk. (A.R. 453). She stated that she can only walk for about three blocks max and after that she needs to rest 10-15 minutes before resuming. Id. She stated that she can only pay attention for 30 minutes at a time and stress exacerbates her condition and increases pain. (A.R. 454). She stated that that she takes naps four times a week for about two to three hours a day. (A.R. 420). She indicated that she has problems bending, squatting, reaching, kneeling, standing, lifting, using her hands, and with task completion. (A.R. 453). Finally, Rubio stated that she was taking way too much medication and that her pain is worse than ever and as a result she is "unable to complete [her] daily tasks.

Br. at 5.

First, Plaintiff's brief offers no more than an exhaustive recitation of all oral and written

---

[7] Indeed, despite the ALJ's initial use of boilerplate language discounting the claimant's statements for "the reasons explained in this decision," later in the opinion the ALJ used language suggesting he was not in fact rejecting Plaintiff's testimony but rather accounted for it in the RFC. *See* AR 30 ("the undersigned has given the claimant the benefit of the doubt and provided a residual functional capacity *that gave significant consideration to her subjective complaints*.") (emphasis added).

14

testimonial evidence of record and a brief critique of the ALJ's boilerplate language. That is not a substitute for identifying specific pieces of evidence which, if credited as true, would support the existence of disabling limitations. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability.").

Second, much of the above-quoted testimony does not speak to the existence of specific limitations. Rather, it consisted of relatively generalized complaints such as neck and back pain worsened by activity, difficulty completing tasks, cooking "less" than she used to, and inability to "do anything" when the pain flairs up. That testimony does not establish that Plaintiff lacked the residual functional capacity to sustain any gainful employment in the national economy at any exertional level with or without restrictions. *See* 20 C.F.R. § 416.945 ("Your residual functional capacity is the most you can still do despite your limitations."); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling").

Third, the specific limitations to which Plaintiff did testify were reasonably accounted for in the RFC. Plaintiff testified that she could lift "no more than 20 pounds."[8]  AR 183.  Consistent with that testimony, the RFC reflects that she was limited to light work which "involves lifting no more than 20 pounds at a time." 20 C.F.R. § 404.1567(b). Plaintiff testified that she could sit and stand for no more than 30 minutes each. AR 182. Consistent with that testimony, the RFC reflects that she required a sit/stand option which is defined as "an ability to change from a sitting position to a standing position every 30 minutes and vice versa, if desired." AR 28. Plaintiff testified that her house work takes all day because she needs to take frequent breaks and she naps 2-3 hours a

---

[8] In contrast, she indicated on her written function report reflects that she could lift "about a gallon of milk max." AR 453.  Plaintiff identifies no reason why her written function report should be credited above her oral testimony, nor would doing so be consistent with applicable law. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (noting that affirmance is appropriate where the evidence supports two conclusions).

15

day 4 days per week. AR 420. Not inconsistent with that testimony, the RFC reflects that she would be off task 5% of the day due to fatigue. Plaintiff testified that she has difficulty holding and grasping things which exacerbates her pain. AR 183–84. Not inconsistent with that testimony, the RFC reflects that she was limited to no more than frequent fingering (2/3 of an eight-hour day).

The VE testified that the above limitations were not work-preclusive. To the extent Plaintiff believes that her testimony, if credited as true, would have required the inclusion of additional or more restrictive limitations than the ALJ incorporated in her RFC, Plaintiff failed to explain as much. Rather, Plaintiff merely asserts without explanation that "crediting Rubio's testimony as true mandates a finding of disabled as it is clear that she could not sustain work eight hours a day five days a week." AR 13. Respectfully, the validity of that assertion is not self-evident in this case for the reasons explained above.

Because Plaintiff fails to demonstrate that the limitations to which she testified were not properly accounted for in the RFC, her argument again falls short. *See Juniel v. Saul,* No. 1:20-CV-0421 JLT, 2021 WL 2349878, at *7 (E.D. Cal. June 9, 2021) (" . . . the ALJ clearly acknowledged that Plaintiff reported anxiety in crowded situations in November 2016 and continued anxiety in crowds in September 2017. Plaintiff fails to show this limitation to which he testified . . . was not properly accounted for in his residual functional capacity, which indicated Plaintiff could not have public contact and limited interaction with co-workers.") (citations and quotations omitted).

### VIII. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor Defendant Kilolo Kijakazi, Commissioner of Social Security,

and against Plaintiff Maria Consuelo Rubio.

IT IS SO ORDERED.

Dated: __August 11, 2021__              /s/ Gary S. Austin
                                        UNITED STATES MAGISTRATE JUDGE